UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN SECTION

CIVIL ACTION NO. 04-30075-MAP

| | |
|---|---|
| LOUIS N. BUONICONTI, ) | |
|       Plaintiff ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| FRIENDLY ICE CREAM ) | |
| CORPORATION, ) | |
|       Defendant ) | |

## PARTIES

1.  Louis N. Buoniconti ("Mr. Buoniconti") is an individual with a residence at 3 Willow Dell Road, Wales, Massachusetts.

2.  Friendly Ice Cream Corporation ("Friendly's") is a Massachusetts corporation whose principal place of business is 1855 Boston Road, Wilbraham, Massachusetts.

## JURISDICTION

3.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Mr. Buoniconti is asserting claims arising under the laws of the United States, including claims under 42 U.S.C. § 12101, et seq. (The Americans With Disabilities Act).

4.  Venue is proper in the Western Section of the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because the defendants all reside in this District and the events giving rise to this action occurred within this District.

## FACTS

5. In or around May 1994, Friendly's hired Mr. Buoniconti as a so-called part-time or seasonal truck driver with full-time hours.

6. On or around May 23, 1994, Mr. Buoniconti began working as a Friendly's truck driver.

7. During his first year of employment, Mr. Buoniconti's employment status at Friendly's remained part-time with full-time hours.

8. Friendly's also utilized Mr. Buoniconti as a welder during his first year of employment, assigning him to Friendly's garage to repair, maintain and modify Friendly's, trucks, trailers and related equipment.

9. On or around Mr. Buoniconti's anniversary date at Friendly's (around May 23, 1995), Friendly's changed Mr. Buoniconti's employment status from part-time to full-time and began providing Mr. Buoniconti with paid vacation (one week at that time), pension benefits, participation in Friendly's 401k Plan, participation in Friendly's health insurance plan and free and discounted Friendly's products.

10. During Mr. Buoniconti's over eight and one half (8 ½) years of employment with Friendly's -- from approximately May 23, 1994 to approximately January 2003 -- Friendly's primarily employed Mr. Buoniconti as a truck driver, but utilized his skills as a welder for a total of approximately two (2) months per year on average.

11. Mr. Buoniconti's truck driving duties generally consisted of (a) making deliveries to Friendly's restaurants ("Bid Runs"), (b) making deliveries to various retail locations ("Retail Runs"), (c) making deliveries to various storage locations ("Storage Runs"), and (d) training new and/or seasonal drivers.

12. At all relevant times, Friendly's full-time drivers bid on Bid Runs quarterly during each calendar year based on seniority, senior drivers receiving priority over less senior drivers.

13. At all relevant times, Friendly's generally assigned Retail Runs and Storage Runs at its discretion.

14. At all relevant times, lifting was not an essential function of Retail Runs, Storage Runs and truck-driving training.

15. At all relevant times, Bid Runs generally included assisting Friendly's employees at the delivery site in the unloading process, but did not include loading the trailer or otherwise require any notable lifting.

16. At all relevant times, Friendly's often gave Retail Runs, Storage Runs and training as overtime work or to its drivers with physical limitations or injuries.

17. Mr. Buoniconti's welding duties at Friendly's consisted of working in Friendly's garage repairing, maintaining and modifying Friendly's trucks, trailers and related equipment.

18. The essential functions of Mr. Buoniconti's welding duties at Friendly's did not include lifting.

19. On or around June 6, 2000, after over six (6) years of employment with Friendly's, Mr. Buoniconti suffered a work-related injury to his right shoulder while making a delivery for Friendly's.

20. In or around October of 2000, Mr. Buoniconti's doctor diagnosed his right shoulder injury as a torn rotator cuff.

21. On or around December 6, 2000, Mr. Buoniconti underwent surgery to repair the right rotator cuff injury he sustained at Friendly's.

22. On or around the date of the surgery on Mr. Buoniconti's right shoulder, Mr. Buoniconti invoked his rights under Mass. G.L. ch. 152, making a claim for workers' compensation.

23. Mr. Buoniconti collected workers' compensation benefits from Friendly for approximately fourteen (14) weeks from the date of the surgery on his right shoulder.

24. Before Mr. Buoniconti underwent surgery in December of 2000 to repair his right rotator cuff and after being released by his doctor with restrictions to return to work following the surgery, Mr. Buoniconti returned to work at Friendly's with a reasonable accommodation.

25. While under medical restrictions, Mr. Buoniconti performed the essential functions of his job at Friendly's, doing Retail Runs and Storage Runs, conducting driver training, working in the garage as a welder, and performing various light duty assignments by Friendly's consistent with his medical restrictions.

26. While under medical restrictions, Mr. Buoniconti also performed the essential functions of his job at Friendly's doing Bid Runs with a reasonable accommodation in the unloading process consistent with his medical restrictions.

27. In or around October of 2001, Mr. Buoniconti suffered a work-related injury at Friendly's in which he re-tore his right rotator cuff.

28. On or around January 10, 2002, Mr. Buoniconti underwent a second surgery to his right rotator cuff.

29. On or around January 10, 2002, Mr. Buoniconti again invoked his rights under Mass. G.L. ch. 152, submitting a claim for workers' compensation at Friendly's.

30. On April 8, 2002, Mr. Buoniconti's doctor released him to perform light-duty work with no reaching above mid-chest and no lifting more than one pound with his right arm.

31. Between April 8, 2002 and May 7, 2002, Mr. Buoniconti went to Friendly's numerous times and requested that Friendly's assign him to available light duty work.

32. Between April 8, 2002 and May 7, 2002, Friendly's refused to assign Mr. Buoniconti to available light duty work or otherwise to accommodate him as Friendly's had previously done in connection with Mr. Buoniconti's 2000 work-related injury.

33. On May 7, 2002, Mr. Buoniconti's doctor released him to return to truck driving with a ten-pound lifting restriction on his right arm.

34. On May 7, 2002, Mr. Buoniconti was capable of performing the essential functions of his job as a truck driver and as a welder at Friendly's with a reasonable accommodation.

35. On or around May 7, 2002, Mr. Buoniconti provided Friendly's with his doctor's note and requested that he be allowed to return to work with a reasonable accommodation.

36. In response to the May 7, 2002 doctor's note, Friendly's refused to return Mr. Buoniconti to work and refused to reasonably accommodate Mr. Buoniconti.

37. Between May 7, 2002 and May 24, 2002, Friendly's denied Mr. Buoniconti's repeated requests to return to his job at Friendly's with a reasonable accommodation.

38. Between May 7, 2002 and May 24, 2002, Friendly's refused to engage in any meaningful dialog with Mr. Buoniconti regarding returning to work or offering any reasonable accommodation.

39. On or about May 24, 2002, Friendly's asked Mr. Buoniconti to meet with his immediate supervisor, Tony Almeida, and Mr. Almeida's superior in the transportation department, Michael St. Marie.

40. At the May 24, 2002 meeting between Mr. Almeida, Mr. St. Marie and Mr. Buoniconti, Mr. St. Marie banned Mr. Buoniconti from Friendly's Wilbraham facility and barred him from continuing to request work from persons at the Wilbraham facility.

41. Between May 24, 2002 and July 8, 2002, Mr. Buoniconti repeatedly requested that Friendly's return him to work with a reasonable accommodation.

42. Between May 24, 2002 and July 8, 2002, Friendly's refused to return Mr. Buoniconti to work or engage in the interactive process or any meaningful dialog regarding a reasonable accommodation.

43. Between May 24, 2002 and July 8, 2002, Friendly's actively sought to hire new employees as truck drivers.

44. On July 8, 2002, Mr. Buoniconti's doctor increased the amount Mr. Buoniconti could lift to thirty-five (35) pounds.

45. With the July 8, 2002 work restrictions, Mr. Buoniconti's could perform the essential functions of his truck-driving job at Friendly's and his welding duties with a reasonable accommodation.

46. In July of 2002, Mr. Buoniconti provided the July 8, 2002 work restrictions to Friendly's and requested that Friendly's return him to work in his truck-driving job with a reasonable accommodation.

47. In both July and August, 2002, Friendly's refused Mr. Buoniconti's repeated requests to return to work with a reasonable accommodation.

48. In both July and August of 2002, Friendly's refused to engage in the interactive process or in any meaningful dialog with Mr. Buoniconti regarding returning to work or exploring any reasonable accommodation.

49. On or about August 1, 2002, Friendly's executed a Personnel Action Form laying Mr. Buoniconti off from work.

50. After the August 1, 2002 layoff, Friendly's retained Mr. Buoniconti as an employee, subject to recall.

51. At the time Friendly's executed the Personnel Action Form on August 1, 2002, laying Mr. Buoniconti off, he was senior to and had bidding and other rights over a number of the other approximately twenty (20) full-time Friendly's drivers.

52. At or around the time Friendly's executed the Personnel Action Form on August 1, 2002, laying Mr. Buoniconti off, Friendly's did not lay off any other full-time truck drivers.

53. At the time Friendly's executed the Personnel Action Form on August 1, 2002, laying Mr. Buoniconti off, Friendly's actively sought to hire new employees as truck drivers.

54. On September 3, 2002, Mr. Buoniconti's doctor increased the amount Mr. Buoniconti could lift to sixty (60) pounds.

55. With the September 3, 2002 work restrictions, Mr. Buoniconti could perform the essential functions of his truck-driving job at Friendly's and his welding duties with or without a reasonable accommodation.

56. In September of 2002, Mr. Buoniconti provided Friendly's with the September 3, 2002 work restrictions and requested that Friendly's return him to his truck-driving job at Friendly's.

57. Despite Mr. Buoniconti's request to return to work, Friendly's refused in September 2002 to return Mr. Buoniconti to his job as a truck driver.

58. At the time Friendly's refused to return Mr. Buoniconti to his truck driving job in September 2002, Friendly's actively sought to hire new employees as truck-drivers.

59. Between May 2002 and January 2003, Friendly's hired new employees as truck drivers for Friendly's.

60. During the period in which Friendly's hired new employees as truck drivers, Friendly's refused to return Mr. Buoniconti to his truck-driving job at Friendly's with or without a reasonable accommodation.

61. In January 2003, Friendly's terminated Mr. Buoniconti's employment with Friendly's.

62. At the time Friendly's terminated Mr. Buoniconti's employment with Friendly's in January 2003, Mr. Buoniconti had three (3) weeks of accrued but unused vacation time.

63. After Friendly's terminated Mr. Buoniconti's employment with Friendly's in January 2003, Friendly's paid Mr. Buoniconti for one (1) week of accrued but unused vacation time.

64. Despite Mr. Buoniconti's requests, Friendly's refused to pay Mr. Buoniconti the additional two (2) weeks of accrued but unused vacation time Friendly's owed to him at the time Friendly's terminated his employment in January 2003.

65. On January 28, 2003, Mr. Buoniconti filed a timely complaint with the Massachusetts Commission Against Discrimination ("MCAD") and requested that the complaint also be filed with the Equal Employment Opportunity Commission ("EEOC").

66. On December 9, 2003, the MCAD issued a finding of probable cause to credit the allegations by Mr. Buoniconti in his MCAD complaint. A complete and accurate copy of the MCAD's probable cause finding is attached hereto as Exhibit A.

67. On or around March 25, 2004, Mr. Buoniconti requested a withdrawal of the MCAD and EEOC actions for the purpose of pursuing his rights in Court.

68.     Mr. Buoniconti filed a timely complaint with the Massachusetts Attorney General's Office requesting permission to pursue a private right of action in Court regarding Friendly's failure to pay Mr. Buoniconti accrued but unused vacation time upon termination, which permission was granted.

## COUNT I
## The Americans With Disabilities Act – Failure To Accommodate
## (42 U.S.C. § 12101, et seq.)

69.     Mr. Buoniconti reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

70.     Mr. Buoniconti has satisfied all prerequisites under The Americans With Disabilities Act and otherwise to filing the present Complaint.

71.     At all relevant times, Mr. Buoniconti was a disabled or handicapped person as defined under the relevant provisions of the law.

72.     At all relevant times Mr. Buoniconti was qualified to perform the essential functions of his job at Friendly's.

73.     At all relevant times Mr. Buoniconti was willing and able to perform the essential functions of his job at Friendly's with or without a reasonable accommodation from Friendly's.

74.     Mr. Buoniconti requested from Friendly's a reasonable accommodation in connection with his disability or handicap.

75.     Friendly's refused to offer or provide a reasonable accommodation to Mr. Buoniconti with respect to his disability or handicap.

76.     Friendly's refused to engage in an interactive process with Mr. Buoniconti or in any meaningful dialog regarding a reasonable accommodation.

77.     As a proximate and foreseeable consequence of Friendly's discrimination,

Mr. Buoniconti suffered and will continue to suffer loss of income and employment benefits, mental and emotional distress and other damages and loss.

## COUNT II
## The Americans With Disabilities Act -Termination
## (42 U.S.C. § 12101, et seq.)

78. Mr. Buoniconti reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

79. Mr. Buoniconti has satisfied all prerequisites under The Americans With Disabilities Act and otherwise to filing the present Complaint.

80. At all relevant times Mr. Buoniconti was a disabled or handicapped person as defined under the relevant provisions of the law.

81. At all relevant times Mr. Buoniconti was qualified to perform the essential functions of his job at Friendly's.

82. At all relevant times Mr. Buoniconti was willing and able to perform the essential functions of his job at Friendly's with or without a reasonable accommodation from Friendly's.

83. Friendly's dismissed, refused to rehire, took adverse action and otherwise discriminated against Mr. Buoniconti on the basis of Mr. Buoniconti's handicap or disability.

84. Friendly's dismissed, refused to rehire, took adverse action and otherwise discriminated against Mr. Buoniconti because Friendly's regarded Mr. Buoniconti as or perceived him to be disabled or handicapped.

85. As a proximate and foreseeable consequence of Friendly's discrimination, Mr. Buoniconti suffered and will continue to suffer loss of income and employment benefits, mental and emotional distress and other damages and losses.

## COUNT III
### Massachusetts Discrimination – Failure To Accommodate
### (Mass. G.L. ch. 151B)

86. Mr. Buoniconti reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

87. Mr. Buoniconti satisfied all prerequisites under Mass. G.L. ch. 151B and otherwise to filing the present Complaint.

88. At all relevant times Mr. Buoniconti was a handicapped person as defined under the relevant provisions of the law, including Mass. G.L. ch. 151B and Mass. G.L. ch. 152, § 75B.

89. At all relevant times Mr. Buoniconti was qualified to perform the essential functions of his job at Friendly's.

90. At all relevant times Mr. Buoniconti was willing and able to perform the essential functions of his job at Friendly's with or without a reasonable accommodation from Friendly's.

91. Mr. Buoniconti requested a reasonable accommodation from Friendly's in connection with his handicap.

92. Friendly's refused to offer or provide a reasonable accommodation to Mr. Buoniconti with respect to his handicap.

93. Friendly's refused to engage in an interactive process or any meaningful dialog with Mr. Buoniconti regarding a reasonable accommodation.

94. As a proximate and foreseeable consequence of Friendly's discrimination, Mr. Buoniconti suffered and will continue to suffer loss of income and employment benefits and is otherwise entitled to recover damages.

## COUNT IV
## Massachusetts Discrimination - Termination
## (Mass. G.L. ch. 151B)

95. Mr. Buoniconti reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

96. Mr. Buoniconti satisfied all prerequisites under Mass. G.L. ch. 151B and otherwise to filing the present Complaint.

97. At all relevant times Mr. Buoniconti was a handicapped person as defined under the relevant provisions of the law, including Mass. G.L. ch. 151B and Mass. G.L. ch. 152, § 75B.

98. At all relevant times Mr. Buoniconti was qualified to perform the essential functions of his job at Friendly's.

99. At all relevant times Mr. Buoniconti was willing and able to perform the essential functions of his job at Friendly's with or without a reasonable accommodation from Friendly's.

100. Friendly's terminated, refused to rehire, took adverse action and otherwise discriminated against Mr. Buoniconti on the basis of Mr. Buoniconti's handicap

101. Friendly's terminated, refused to rehire, took adverse action and otherwise discriminated against Mr. Buoniconti because Friendly's regarded Mr. Buoniconti as or perceived him to be handicapped.

102. As a proximate and foreseeable consequence of Friendly's discrimination, Mr. Buoniconti suffered and will continue to suffer loss of income and employment benefits and is otherwise entitled to recover damages.

### COUNT V
### Workers' Compensation Preference Claim
### (Mass. G.L. ch. 152, § 75A)

103. Mr. Buoniconti reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

104. Friendly's laid Mr. Buoniconti off and terminated his employment based on a work-related injury for which Mr. Buoniconti invoked his rights under Mass. G.L. ch. 152.

105. Following Mr. Buoniconti's layoff and termination, he repeatedly requested that he be returned to a truck driving position.

106. Friendly's hired additional employees as truck drivers and other employees without first offering available positions to Mr. Buoniconti.

107. As a proximate and foreseeable consequence of Friendly's discrimination, Mr. Buoniconti suffered and will continue to suffer loss of income and employment benefits and other damages, including statutory attorneys' fees and costs.

### COUNT VI
### Workers' Compensation Discrimination Claim
### (Mass. G.L. ch. 152, § 75B Claim)

108. Mr. Buoniconti reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

109. Mr. Buoniconti suffered a work-related injury at Friendly's for which Mr. Buoniconti invoked his rights under Mass. G.L. ch. 152 for workers' compensation benefits.

110. Mr. Buoniconti was capable of performing the essential functions of his job with a reasonable accommodation while injured and collecting workers' compensation.

111. Mr. Buoniconti was capable of performing the essential functions of his job at Friendly's without any accommodation after recovering from his work-related injuries.

112. Friendly's discharged, refused to rehire, took adverse action against and otherwise discriminated against and Mr. Buoniconti based on his exercise of rights afforded under Mass. G.L. ch. 152.

113. As a proximate and foreseeable consequence of Friendly's discrimination, Mr. Buoniconti suffered and will continue to suffer loss of income and employment benefits and other damages and is entitled to recover statutory attorneys' fees and costs.

### COUNT VII
### Wage Act Claim
### (Mass. G.L. ch. 149, §§ 148 And 150)

114. Mr. Buoniconti reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully in this count of the Complaint.

115. Mr. Buoniconti has complied with all prerequisites to filing suit under Mass. G.L. ch. 149 and otherwise.

116. At the time Friendly's terminated Mr. Buoniconti's employment, Mr. Buoniconti's was entitled to accrued but unused vacation pay.

117. Friendly's failed to compensate Mr. Buoniconti for his accrued but unused vacation time pursuant to Friendly's termination of his employment.

118. As a proximate and foreseeable consequence of Friendly's conduct, Mr. Buoniconti is entitled to recover compensation for his accrued but unused vacation pay, as well as statutory attorneys' fees and costs.

WHEREFORE, Mr. Buoniconti demands that Judgment enter against Friendly's on Counts I though VII, above, and that the following damages be awarded:

a. Salary and benefits from the date of Friendly's adverse action and discrimination to the date of the trial in this matter;

b. Salary and benefits from the date of the trial in this matter for so long a period as Mr. Buoniconti would have continued to be employed by Friendly's or to receive compensation or benefits from his employment with Friendly's;

c. Compensation for the loss of various rights, including but not limited to the loss of seniority rights and the economic and other benefits and advantages associated with such rights, as a result of Friendly's adverse and discriminatory conduct;

d. Damages for emotional distress;

e. Punitive damages;

f. Reasonable attorneys' fees and costs;

g. Such other relief as the Court may deem appropriate.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

Dated: April 13, 2004

The Plaintiff,
LOUIS N. BUONICONTI
By His Attorney:

Jeffrey E. Poindexter – BBO #631922
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115
Tel:  (413) 781-2820
Fax:  (413) 272-6803